## PIERSON *v.* DIRECTOR OF PATUXENT INSTITUTION

[App. No. 114, September Term, 1963.]

*Decided July 28, 1964.*

Before Brune, C. J., and Henderson, Hammond, Prescott, Horney, Marbury and Sybert, JJ.

Marbury, J., delivered the opinion of the Court.

This is an application for leave to appeal from an order of

the Criminal Court of Baltimore dated September 27, 1963, committing applicant to the Patuxent Institution under the provisions of Code (1963 Cum. Supp.), Article 31B, after a verdict of a jury finding him to be a defective delinquent.

The basis for observation and examination of applicant was his conviction on January 15, 1962, of burglary, for which he was sentenced to serve not more than three years in the Maryland State Reformatory for Males (now Maryland Institution for Men) and from which he was referred to Patuxent Institution.

Court appointed counsel raises the following contentions:

1. It was reversible error to admit into evidence the findings and conclusions of various members of the Patuxent Institution staff, the contents of the staff report, and the expert opinion of Dr. Boslow based thereon.

2. It was reversible error to admit into evidence the contents of a letter from the acting superintendent of the Maryland Institution for Men.

3. The evidence was insufficient to support the verdict.

(1) In a line of cases beginning with *Purks v. State*, 226 Md. 43, this Court has held reports of the Institution's staff admissible over hearsay objection. At the time that case was decided, as now, Code (1957), Article 31B, Section 7 (a), in addition to requiring that a medical physician, a psychiatrist and a psychologist shall examine a defendant for possible defective delinquency after having assembled "all pertinent information about the person to be examined," specifically provided that the examiners, on the basis of this information, "plus their own personal examination and study" of the person, were to determine whether in their respective opinions such person was a defective delinquent and to report their findings in writing to the court.

Section 8 (a) at that time provided that if the consensus of the examiners was that the person examined was a defective delinquent, he was to be summoned by the court for a hearing and the court was authorized, in its discretion, to "summon other witnesses and secure further evidence." In *Purks v. State, supra,* Judge Horney, for this Court, reasoned that the legislative authorization to "secure further evidence" created an im-

plied exception to the hearsay rule for staff reports prepared in compliance with Section 7 (a).

Since that leading case was decided contentions similar to the one raised herein have been summarily disposed of, citing either *Purks* or an intermediate case which had itself relied upon *Purks* to refute the contention of the inadmissibility of the report and the findings and conclusions of the staff members.[1] However, by the Acts of 1963 (Ch. 283), Section 8 was materially amended. It now deals only with the defendant's right to counsel, and the language relied upon so heavily in *Purks v. State, supra,* permitting the lower court in its discretion to "summon other witnesses and secure further evidence" was deleted. Therefore, argues the applicant through his counsel, the prop upon which *Purks* and subsequent cases rested has been removed, and the staff report is now subject to the common law rules of hearsay evidence which would render the report inadmissible in part or entirely.

The contention is forceful, but a careful re-examination of Section 7 (a) of Article 31B leads us to the conclusion that the language contained therein is in itself sufficient to render the staff report admissible. This conclusion was perhaps foreshadowed in *Fairbanks v. Director,* 226 Md. 661, decided shortly after *Purks v. State, supra.* While stating that *Purks* was controlling, the opinion nevertheless asserted, at page 663 that "by Section 7 (a) of said Article 31B the legislature, by clear implication, has made the report required by said section admissible as evidence in [a] hearing on the question of defective delinquency." After all, Section 7 (a) requires submission of the report in writing to the court. It would be of little value unless it contained the basis for the findings of the institution's experts, and likewise of little value if it were not contemplated that the report be used as evidence at the hearing, the sole purpose of which is the determination of defective delinquency.

We think the mere repeal and re-enactment of Section 8 by the legislature for the stated purpose, *inter alia,* of "revising the

---

1. See: Dandy v. Director, 232 Md. 619; McCloskey v. Director, 230 Md. 635; Faulkner v. Director, 230 Md. 632; McDonough v. Director, 229 Md. 626; Schultz v. Director, 227 Md. 666; Queen v. Director, 226 Md. 664; Fairbanks v. Director, 226 Md. 661.

658

procedure for the conduct of preliminary hearings and hearings for determination of defective delinquency and the appointment and rights of counsel * * *" was in no way a legislative expression prohibiting use of the reports thereafter. As was stated in *Purks,* even though the reports contain hearsay evidence, the admission of such information if not expressly directed was at least permissive. We think this is as true under Section 7 (a) as it was under Section 8 (a). Accordingly we hold the testimony objected to came within that contemplated as being admissible by Section 7 (a).

(2) What was said above applies with equal force to the letter from the assistant superintendent. It was a part of the "pertinent information about the person to be examined" which Section 7 (a) requires to be assembled, for it summarized applicant's behavior while he was incarcerated in the Maryland Institution for Men. The letter was therefore properly admitted.

(3) The evidence objected to having been held properly admitted, there was sufficient evidence upon which the jury could have determined that applicant was a defective delinquent.

*Application denied.*