## DANIELS *v.* DIRECTOR OF PATUXENT INSTITUTION

[App. No. 66, September Term, 1964.]

*Motion to withdraw and reconsider earlier opinion filed February 12, 1965, granted March 1, 1965.*

*Decided March 11, 1965.*

Before Prescott, C. J., and Hammond, Horney, Marbury, Sybert, Oppenheimer and Barnes, JJ.

Horney, J., delivered the opinion of the Court.

This is an application for leave to appeal from the order of the Circuit Court for Prince George's County recommitting Samuel Daniels to Patuxent Institution after the finding by a jury that he was still a defective delinquent as defined by Code (1964 Cum. Supp.), Art. 31B, § 5.

The applicant, who is twenty-four years old and has no known relatives, was taken in protective custody as an infant and lived

in foster homes during most of his early childhood. Since then he has been confined from time to time in Boys' Village, State Reformatory for Males and Patuxent Institution. He has a history of stealing money and other property from his foster parents and from inmates of the institutions in which he resided. When he was about fourteen he attempted to have sexual relations with a seven year old girl. The institutional records further indicate that he has continued to be somewhat of a "sexual problem."

Six years ago the applicant pled guilty to storehouse breaking and larceny and was sentenced to an indeterminate term not exceeding three years in the Reformatory from which he was subsequently transferred to Patuxent for examination. Sometime later a jury found him to be a defective delinquent. During the initial period of his confinement and treatment at Patuxent, he was promoted from time to time until he reached the fourth tier, which is the tier inmates must reach to be eligible for probationary or final release, but he was subsequently demoted to a lower tier. Whether he thereafter regained fourth tier status is not clear from the record.

Whatever his status may have been at the time of the redetermination hearing, the medical records of the institution and the depositions of staff personnel—a psychiatrist and a psychologist—show that the applicant, as the jury found, is not yet ready to be released. Within the statutory definition, the applicant exhibits "intellectual deficiency" in that he has an I.Q. of 76. There is also substantial evidence of "emotional unbalance" due to his low intellectual level and his lack of control over his "explosive and aggressive impulses." The psychiatrist was of the opinion that "in spite of some gains he has made more recently in terms of behavior, he remains a very impulsive, bitter, suspicious and thoughtless individual with a poor prognosis for rehabilitation."

The applicant assigned several reasons why he should have been released.

The contentions that the verdict of the jury was contrary to the evidence and the weight of the evidence are clearly without merit. There was ample evidence to support the verdict of the jury and the weight of it was not available as a ground for

leave to appeal. *Silvestri v. Director,* 234 Md. 641, 199 A. 2d 784 (1964); *Cooper v. Director,* 234 Md. 622, 198 A. 2d 301 (1964).

The contention that the testimony of the psychiatrist to the effect that the inmate would be unable to earn a livelihood should not have been received, is likewise without merit. Whether or not the inmate could be safely released into society without reverting to anti-social behavior necessarily involved his ability to get a job and hold it. While speculation as to his future economic potential might not be relevant to the issue, there was in this case such material relationship between the testimony of the psychiatrist as a whole and the requirements of the statute, concerning "intellectual deficiency" and "emotional unbalance," as to make it clear that the possibilities of gainful employment, on the one hand, are slight, and that the probabilities of further criminal activity, on the other hand, are great.

As to the contention that the evidence respecting the alleged sexual behavior of the inmate as a youth was improper and prejudicial, we reiterate what we said in *Bullock v. Director,* 231 Md. 629, 190 A. 2d 789 (1963), that "evidence of prior anti-social behavior is admissible in cases of this nature." Such evidence was relevant to the issue of institutional adjustment and to the ultimate question of whether it would be "reasonably safe for society to terminate the confinement and treatment."

And there is no basis for the claim that the lower court erred when it refused a *voir dire* examination of the jurors. Aside from the indication that the request came too late because the jury had already been empanelled and sworn, see *Young v. State,* 90 Md. 579, 45 Atl. 531 (1900), the failure of the applicant to state the "specific cause for disqualification" to be inquired into, would make appellate review impossible. *Grogg v. State,* 231 Md. 530, 191 A. 2d 435 (1963).

Lastly, the applicant, claiming that the application of § 5 of Art. 31B to his intellectual and emotional status, has put him in double jeopardy and made him a victim of cruel and unusual punishment in that he is compelled to endure a life sentence for a petty property offense for which, in the first instance, he was given a sentence of not more than three years, contends

that the lower court, by not affording him a plenary hearing for the purpose of inquiring whether Patuxent is fulfilling its purpose as to him, thereby denied him the right to show that he is in fact confined in a penal institution undergoing punishment rather than treatment for his alleged defective delinquency in violation of his constitutional rights. While the record before us does not indicate whether the question posed here was ever raised below, or whether a proffer was ever made as to what the applicant intended to show with respect thereto, such question, although inartfully stated, was raised in the motion for a judgment n.o.v., or in the alternative, for a new trial, and we think the lower court should have considered it.

The application for leave to appeal will be denied as to all contentions except the last one. As to it, leave to appeal will be granted and the case remanded so that the lower court may determine whether his continued detention at Patuxent is a violation of his constitutional rights. *Sas v. Maryland,* 334 F. 2d 506 (4th Cir. 1964). On remand, the hearing judge, besides making provision for an adequate record of the proceedings, shall make explicit findings of fact and expressly state his conclusions of law.

*Application, as limited in the opinion, granted.*